WALKER, Justice,
for the Court:
This is a suit for damages alleged to have been sustained by Kelly’s Big Star, Inc., a food store, because of an alleged campaign of unfair competition by false advertising conducted by Dixieland Food Stores, Inc., through its employees, Charles E. Kervin and Phillip Skinner. Another defendant named in the suit Benson Wholesale, Inc., was granted a directed verdict at the end of the plaintiffs’ case. The case against the remaining defendants was submitted to a jury in the Circuit Court of Smith County, resulting in a verdict and judgment for Kelly’s Big Star in the amount of $250,000. We reverse and render.
For the purposes of the opinion, the defendants will be referred to as Piggly Wiggly. Big Star sued Piggly Wiggly for damages alleged to have resulted from untrue misleading and deceptive advertisements published by Piggly Wiggly in violation of Mississippi Code Annotated section 97-23-3 (1972), which reads as follows:
Any person who, with intent to sell or in any way dispose of merchandise, secu *634 rities, service, or anything offered by such person, directly or indirectly, to the public for sale or distribution, or who, with intent to increase the consumption of or demand for such merchandise, securities, service or other thing, or to induce the public in any manner to enter into any obligation relating thereto, or to acquire title thereto, or an interest therein, makes, publishes, disseminates, circulates or places before the public, or causes, directly or indirectly, to be made, published, disseminated, circulated or placed before the public within the state, in a newspaper or other publication, or in the form of a book, notice, handbill, poster, bill, circular, pamphlet or letter, or by a label affixed to the merchandise or its container, or in any other way, an advertisement of any sort regarding merchandise, securities, service or anything so offered to the public, which advertisement contains any assertion, representation or statement of fact which is untrue, deceptive or misleading, including but not limited to representing himself as selling at wholesale unless he is actually selling at wholesale those items so represented, and which such person knew, or might on reasonable investigation have ascertained to be untrue, deceptive or misleading, shall be punished by a fine of not more than five hundred dollars ($500.00), and the offending person, whether found guilty or not, may be held civilly responsible in tort for damages to persons or property proximately resulting from a violation of this section. This section shall not apply to any owner, publisher, printer, agent or employee of a newspaper or other publication, periodical or circular, or to any agent of the advertiser who in good faith and without knowledge of the falsity or deceptive character thereof publishes, causes to be published, or participates in the publication of such advertisement. Firms with the word “wholesale” in their corporate title are not in violation of this section so long as they identify the sales as being made by their retail division.
In 1977 Big Star and Piggly Wiggly were the only large grocery stores in Taylorsville, and their quest for the local grocery business was highly competitive. Big Star had been running an advertisement in the Tay-lorsville Signal, which ad stated, “Why pay more!! Check our Prices first!!” Phillip Skinner, the manager of the Taylorsville’s Piggly Wiggly Store, decided to check Big Star’s prices to see if they were really any lower. After checking the prices of certain name brand goods carried by both stores, Skinner obtained permission from his supervisors to prepare a comparative advertisement setting forth the difference in prices.
Before making the price comparison, Skinner hired the services of Mr. P. A. Cockrell, a notary public, for the purpose of attesting to the accuracy of the price comparison. Cockrell then accompanied an employee of Piggly Wiggly, who purchased 172 name-brand items at both the Big Star and Piggly Wiggly stores in Taylorsville. Skinner then ran an advertisement in the Tay-lorsville Signal listing all 172 items and the prices charged by both stores. Of the 172 items listed, Piggly Wiggly’s prices were lower on 171 items.
Big Star does not challenge the accuracy of the prices or the price difference of the 172 items bought and compared, except for three arguable discrepancies making a total difference of 2OV2 cents. On the stand even Mr. Robert Kelly, the owner of Kelly’s Big Star, admitted that out of 172 items such a slight discrepancy was pretty accurate printing. There is no testimony that indicates this minor discrepancy was intentional, and there was some testimony that the error may have been on the part of Big Star’s own cashier. The advertisement Pig-gly Wiggly ran indicated that the price difference of the 172 items totalled $21.45. This affidavit prepared by Mr. Cockrell indicated that the total of the purchases made at Big Star was in the amount of $244.18. The affidavit indicated that the same items at Piggly Wiggly sold for $223.11, or a difference of $21.07 less at Piggly Wiggly.
When the advertisement was prepared, there was placed in the bottom right-hand *635 corner in an inconspicuous manner, and covering a minimal amount of the total area of the full page advertisement, an attestation which read as follows: “Products listed above were purchased and compared on week ending October 15 by P. A. Cockrell, Notary Public, at Taylorsville Piggly Wiggly and Big Star. The items are on display at Piggly Wiggly for varification (sic).”
Big Star took exception to this portion of the advertisement contending it was not accurate in that Mr. Cockrell did not, in fact, “purchase” the merchandise from Big Star, but only accompanied and observed a Piggly Wiggly employee who made the actual purchases. Upon receipt of this objection, Piggly Wiggly revised the next printing of the advertisement to more accurately read: “Products listed above were purchased and compared on week ending October 15, 1977. The transactions by Piggly Wiggly were supervised, compared and notarized by P. A. Cockrell, Notary Public at Taylorsville Piggly Wiggly and Big Star. The items are on display at Taylorsville Piggly Wiggly for varification (sic).”
Although this ad more accurately reflected the role of Mr. Cockrell, Big Star nevertheless objected to it and demanded a complete retraction of the ad. The Piggly Wiggly manager again conferred with his attorney, who advised him that the advertisement was accurate and there was no need for any further change. However, he did suggest an alternative advertisement should Piggly Wiggly desire to change it. Piggly Wiggly, in an attempt to satisfy Big Star, revised the next printing of the advertisement to reflect the changes made in the previous two ads. The second revised advertisement reflected that the purchases were made in the presence of a notary public and that a notarized statement of the accuracy of the purchases and comparisons, along with the actual tapes on purchased products, was available upon request at the Taylorsville Piggly Wiggly. This advertisement, in essentially the same form was printed in three successive editions of the Taylorsville Signal.
In summary, the first advertisement ran only in the October 26, 1977 edition of the Taylorsville Signal. The second advertisement ran in only the November 2, 1977, edition of the Taylorsville Signal. The third advertisement ran in three successive editions of the Taylorsville Signal, on November 9, 16 and 23, 1977. In addition to running the first advertisement in the Tay-lorsville Signal, Piggly Wiggly mailed out approximately 12,000 printed circulars of the ad to the postal patrons in the Taylors-ville area. Also, it was admitted that a three foot by five foot poster of the original ad was displayed inside the Piggly Wiggly store during the five weeks the advertisement campaign was run.
At the trial, Big Star entered into evidence the above advertisements along with the posters and the advertising circulars which advised the shoppers in the area of the comparison of prices. It also introduced evidence that it had suffered a monetary loss of net profits over the next sixteen months-from November 12, 1977 through March 31, 1979-and contended that the loss was a result of the erroneous advertisement of October 26, 1977.
The defendant put on rebuttal testimony and testimony reflecting the nature of their business and the manner and reasons for the increase in their gross business to dispel the contentions of Big Star that the advertisement had been the reason for Big Star’s loss of business. For example, there was testimony that beginning in September of 1977 Piggly Wiggly hired full-time employees to replace part-time help, which had been subject to a high turnover. Another step was to add an extra gondola or aisle to give customers a better selection and to give the shelves more holding space. The variety of goods offered increased by over 500 items. Also, a company-wide stoneware promotion offering a three-piece setting for 99$ for each purchase of $9.99 began on September 14, 1977, and coupon booklets were distributed to potential customers toward the end of 1977 or early 1978. In addition, Piggly Wiggly conducted Bingo Magic games and Cash-King games during this time. Certainly each of the *636 above tended to attract customers to shop at Piggly Wiggly, and in the process caused Big Star to lose customers. However, there is no contention that the above steps constitute “unfair competition,” either separately or in combination.
After both sides rested, the court instructed the jury as to both actual and punitive damages. The jury thereafter returned its verdict of $50,000 actual damages and $200,000 punitive damages.
Although there were reversible errors in the introduction of evidence, as well as in the granting of instructions, it is only necessary that we consider one error assigned by Piggly Wiggly, and that is, whether it was entitled to a peremptory instruction which it was.
Although section 97-23-3 provides that one may be held civilly responsible in tort for a violation of that section, as in any other case, damages sustained, if any, must be proximately caused by the alleged untrue, deceptive or misleading advertisement. It was never the intent of the Legislature that every mere technical error or misstatement in an advertisement would cause the advertiser to be liable in damages if the technical error were not a substantial contributing factor to the damages sustained. In this case, the thrust of the advertisement and its obvious intent and purpose was to compare the prices of certain grocery items carried by the two stores. As stated, there is no contention that there was any error in the prices listed in the advertisement. It is not even suggested, and there was no proof submitted, that any customers switched from Big Star to Piggly Wiggly because of a statement in the one ad that Mr. Cockrell “purchased” the compared goods. As the later advertisements correctly stated, Mr. Cockrell merely accompanied a Piggly Wiggly employee who did the purchasing. Further, as stated earlier, the portion of the advertisement concerning Mr. Cockrell's role in the price comparison test was an insignificant part of the ad, was placed in a small area in an inconspicuous spot, and only verified that the ad was correct according to him. It is very significant that the correctness and accuracy of the prices listed in the advertisement were not challenged in the lawsuit.
Therefore, after careful review of this record, we have reached the inescapable conclusion that the plaintiff wholly failed to show any causal connection between the inaccuracy of the advertisement and any damages alleged to have been sustained. It is true that the advertisement published in the October 26, 1977, edition of the Taylorsville Signal and circulars contained a statement which was technically untrue. However, under the facts contained in this record, there is no proof that any customers were in any way misled or deceived by this misstatement.
In its brief and argument before this Court, Big Star contends that it alleged and proved that the defendants used false advertisements with an intent to destroy its business. In Memphis Steam Laundry Cleaners v. Lindsey, 192 Miss. 224, 5 So.2d 227 (1941), this Court recognized the existence of a common-law action for unfair competition, where the dominant purpose to inflict injury is established. However, even a casual review of the facts in this case shows it is not within the ambit of the Memphis Steam Laundry, case.
Therefore, for the reasons outlined above, the judgment of the lower court is reversed and judgment is rendered here for the defendants.
REVERSED AND RENDERED.
PATTERSON, C. J., SMITH and ROBERTSON, P. J., and SUGG, BROOM, LEE and COFER, JJ., concur.
BOWLING, J., took no part.